## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ahmed Ali Yadin,

              Petitioner,

Case No. 16-cv-3466 (SRN/SER)

v.

**ORDER AND REPORT AND RECOMMENDATION**

Jeff Sessions,[1] John F. Kelley,[2] Jason Sieving,
Warden of Immigration and Detention Facility,
Thomas D. Homan,[3] and Joel L. Brott,

              Respondents.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Ahmed Ali Yadin's ("Yadin") Petition For Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") [Doc. No. 1] and Motion to Supplement Petitioner's Reply ("Motion to Supplement") [Doc. No. 14]. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court grants Yadin's Motion to Supplement and recommends dismissing Yadin's Petition.

---

[1] On February 9, 2017, Jeff Sessions became the Attorney General of the United States, succeeding Loretta E. Lynch. *See Office of the Attorney General*, United States Dep't of J., https://www.justice.gov/ag (last visited Apr. 6, 2017). Jeff Sessions is therefore automatically substituted as a defendant in this matter. *See* Fed. R. Civ. P. 25(d).

[2] On January 20, 2017, John F. Kelley became the Secretary of Homeland Security, succeeding Jeh Johnson. *See Secretary of Homeland Security*, Dep't of Homeland Security, https://www.dhs.gov/secretary (last visited Apr. 6, 2017). John F. Kelley is therefore automatically substituted as a defendant in this matter. *See* Fed. R. Civ. P. 25(d).

[3] On January 30, 2017, Thomas D. Homan became the Acting Director of Immigration and Customs Enforcement ("ICE"), succeeding Sarah Saldana. *See ICE Leadership*, United States Dep't of Immigration and Customs Enforcement, https://www.ice.gov/leadership (last visited Apr. 6, 2017) (select the portrait of Thomas D. Homan). Thomas D. Homan is therefore automatically substituted as a defendant in this matter. *See* Fed. R. Civ. P. 25(d).

## I.    FACTUAL BACKGROUND

Yadin filed his Petition pro se on October 13, 2016. (Pet.). In his Petition, Yadin alleges that on March 30, 2016, an Immigration Judge ("IJ") ordered that Yadin be deported back to Somalia. (*Id.* at 2–3).[4] The IJ's removal order became final on April 11, 2016, when Yadin waived his right to appeal the IJ's decision. *See* (Pet'r's Superseding Reply to Resp'ts' Answer to Pet. For Writ of Habeas Corpus, "Reply II") [Doc. No. 11 at 3]. In his Petition, Yadin further alleges that he has cooperated with ICE officials in effectuating his removal. (Pet. at 2, 4). Yadin also asserts that there is no significant likelihood of removal in the reasonably foreseeable future. (*Id.* at 7). In light of these factors, Yadin argues that he has been detained beyond the presumptive sixth-month period permissible under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 6–8). Yadin also argues that his prolonged detention is a violation of the Fifth Amendment of the United States Constitution. (*Id.* at 9). Yadin seeks an order from the Court granting his supervised release. (*Id.*).

On November 23, 2016, Respondents submitted their Response to Yadin's Petition. *See* (Resp. to Pet. for Writ of Habeas Corpus, "Resp. I") [Doc. No. 4]. Respondents asserted, *inter alia*, that Yadin's detention is permissible under *Zadvydas* because Yadin's removal is significantly likely to occur in the reasonably foreseeable future. *See* (*id.* at 8–11). In particular, Respondents stated that they were in the process of obtaining travel documents for Yadin's removal and expected to receive the travel documents shortly. *See* (*id.* at 8–9, 11); (Decl. of Christopher A. Campbell, "Campbell Decl. I") [Doc. No. 5 ¶¶ 14–15]. Respondents supported their argument that Yadin is likely to be removed in the near future by pointing to recent removals of other Somali detainees. (Campbell Decl. I ¶ 21).

---

[4]    When referencing the Petition, CM/ECF pagination is used.

On December 13, 2016, Yadin filed a reply, pro se, to Respondents' Response. *See* (Pet'r's Resp. to the Respondents, "Reply I") [Doc. No. 7]. Yadin primarily argues that based on the political uncertainty in Somalia, deportations have been halted with no indication of when they may resume. (*Id.* at 2–3). Yadin supports this assertion with anecdotal evidence that ICE personnel have told him that "no travel documents [will be] issued until matters are resolved." (*Id.* at 3). Yadin also details extended detention periods for numerous Somali nationals prior to removal. (*Id.* at 5–6). In light of these extended detention periods, Yadin states that there are significant bottlenecks in the removal process for Somali nationals that do not support Respondents' position that removal is likely to occur in the reasonably foreseeable future. (*Id.* at 6).

On March 1, 2017, Yadin filed a second reply, this time prepared by Yadin's counsel who noticed an appearance on Yadin's behalf. (Reply II); *see also* (Notice of Appearance) [Doc. No. 10]. In this reply, Yadin asserts that removal is not likely

> in the reasonably foreseeable future because the Embassy of Somali is presently issuing travel documents only to Somali nationals with final removal orders who write a statement to confirm their consent to be returned, and Petitioner **has not and will not write** such a statement because he fears that he will persecuted, harmed or killed in Somalia.

(*Id.* at 2) (emphasis added). Yadin further states that Respondents have generated a list of Somali nationals to be removed sometime in March, but that he is not on that list. (*Id.* at 7). Yadin provides no information as to whether his omission from this March list is due to his own failure to consent to removal or independently based on decisions made by Respondents. Nevertheless, Yadin argues that requiring that he consent to removal as a condition for compliance of ICE's requests "would [be] an unreasonable requirement when Petitioner has a subjective fear that he will be persecuted, harmed or killed in Somalia." (*Id.* at 8).

3

The Court directed Respondents to provide supplemental briefing regarding the issues raised in Yadin's Reply II. (Order Dated Mar. 6, 2017) [Doc. No. 13]. On March 16, 2017, Yadin requested that he be allowed to supplement the record with an article discussing the current state of deportations of Somali nationals, which he provided with his motion. *See* (Mot. to Supplement); (Ex., "Yadin's Article") [Doc. No. 15].[5]

On March 21, 2017, Respondents filed their supplemental response. (Resp. II). Respondents detail a new requirement for removal established by the Somali government in late 2016 whereby consent for removal must be provided before travel documents are issued. (*Id.* at 2); (Second Decl. of Christopher A. Campbell, "Campbell Decl. II") [Doc. No. 17 ¶ 5]. Based on this new requirement, Respondents state that they have requested that Yadin provide this consent on at least two occasions, and on both occasions he declined to provide the necessary consent. *See* (Resp. II at 3); (Campbell Decl. II ¶ 5). In response to Yadin's failure to provide consent for removal, Respondents have issued Yadin a notice of his failure to comply with these requests pursuant to 8 C.F.R. § 241.4(g)(5)(iii).[6] *See* (*id.* at 3, 5); (Campbell Decl. II ¶ 8); (Ex. 3, Attached Campbell Decl. II) [Doc. No. 17-2]. Respondents also assert that they met their obligations under the promulgated federal regulations when Yadin was informed that his noncompliance would extend the duration of his detention. *See, e.g.*, (Resp. II at 3, 5); (Ex. 3). On February 14, 2017, Respondents issued Yadin a Form I-229(a) Warning for Failure to

---

[5]    Respondents did not formally respond to Yadin's Motion to Supplement and instead stated in their supplemental response that "Petitioner further supplemented the record with an additional exhibit on March 16, 2017." (Suppl. Resp. to Pet. for Writ of Habeas Corpus, "Resp. II") [Doc. No. 16 at 2]. The Court, therefore, grants Yadin's Motion to Supplement and considers the supplemental information in its analysis of the issues before it.

[6]    8 C.F.R. § 241.4 are regulations for the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period." 8 C.F.R. § 241.4(g)(5)(iii) states in relevant part that ICE "shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law."

Depart. (Campbell Decl. II ¶ 10). Respondents allege that—despite their attempts—Yadin "continue[s] to refuse to cooperate." (*Id.*).

To that end, Respondents allege that Yadin's noncompliance is the reason for his detention beyond the presumptive six-month period. (Resp. II at 1). In support of Respondents' argument that but for Yadin's noncompliance his removal is likely to occur in the reasonably foreseeable future, Respondents note that all Somali nationals who have complied with the consent requirement have received travel documents. *See* (*id.* at 6); (Campbell Decl. II ¶¶ 6, 9). In light of these facts, Respondents argue that because Yadin has frustrated his own removal, his continued detention is permissible under 8 U.S.C. § 1231 and relevant case law. (Resp. II at 4–7).

## II.     DISCUSSION

### A.     Legal Standard

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . cases [involving the detention of aliens to be removed]." *Zadvydas*, 533 U.S. at 687.

### B.     Analysis

#### 1.     Prolonged Detention Under *Zadvydas*

The detention of aliens to be removed is permissible under 8 U.S.C. § 1231. "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). In *Zadvydas*, the Supreme Court established an implicit limitation to certain provisions of the statute. *See Zadvydas*, 533 U.S. at 680 (establishing a 6-month presumptive limitation for detention of aliens to be removed and "[a]fter the 6–month period, once an alien provides **good reason** to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing" (emphasis added)).

Yadin relies heavily on the *Zadvydas* decision, the fact that his removal order was final on April 11, 2016, and his unwillingness to consent to removal to argue that there is no likelihood of removal in the reasonably foreseeable future. (Reply II at 4–7). Yadin's reliance on *Zadvydas* is misguided and his arguments are without merit. Importantly, *Zadvydas* does not address detention arising out of 8 U.S.C. § 1231(a)(1)(C) and the plain language of section 1231(a)(1)(C) vitiates Yadin's arguments.

Section 1231(a)(1)(C) provides that: "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or **acts to prevent the alien's removal subject to an order of removal**." (emphasis added). "Subsequent to *Zadvydas*, numerous courts have held that, when an alien refuses to cooperate in securing his removal, he can be detained under § 1231(a)(1)(C) for longer than the six-month period that *Zadvydas* established as presumptively reasonable under § 1231(a)(6)." *Hydara v. Gonzales*, No. 07–cv–0941 (PJS/JSM), 2007 WL 2409664, at *2 (D. Minn. Aug. 21, 2007) (Schiltz, J.), *aff'd sub nom. Hydara v. Doe*, 324 F. App'x 534 (8th Cir.

2009). "These courts have assumed that *Zadvydas* applies to aliens being detained under § 1231(a)(1)(C) and reasoned that, when an alien obstructs his removal, **he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.**" *Id.* (emphasis added) (citing *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003); *Pelich v. INS*, 329 F.3d 1057, 1059–61 (9th Cir. 2003); *Davis v. Gonzales*, 482 F. Supp. 2d 796, 800–01 (W.D. Tex. 2006); *Powell v. Ashcroft,* 194 F. Supp. 2d 209, 212 (E.D.N.Y. 2002)). "The reasoning is that, where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." *Ndenge v. Gonzales*, No. 07–cv–1726 (MJD/JJG), 2008 WL 682091, at *2 (D. Minn. Mar. 6, 2008) (Graham, Mag. J., as adopted by Davis, J.) (citing *Lema*, 341 F.3d at 856–57; *Hydara*, 2007 WL 2409664; *Kanteh v. Ridge*, No. 05–cv–313 (DWF/AJB), 2005 WL 1719217 (D. Minn. June 30, 2005) (Boylan, Mag. J.)).

In light of the relevant case law, Yadin is unable to sustain his burden of showing that removal is unlikely to occur in the reasonably foreseeable future. It is undisputed that Yadin has not complied with ICE's requests to effectuate Yadin's removal. Both parties agree that the Somali government issues travel documents to those that consent. (Reply II at 2); (Resp. II at 5–6). Yet, Yadin himself states unequivocally that he will not consent to removal, as is currently required. *See* (Reply II at 2). Respondents have also put forth evidence establishing that but for Yadin's obstructions, he likely would have been removed. *See* (Resp. II at 6) (stating that every Somali national that has consented to removal has received travel documents). There is nothing to suggest that anyone other than Yadin controls the timing of his removal.

Instead, Yadin argues that his subjective fear is sufficient to discharge his compliance obligations. (*Id.*). This argument is unpersuasive. Yadin has provided no support for this

proposition. Furthermore, many aliens enter the United States because of their subjective fear of harm if they remain in their country of origin. If a person's subjective fear of harm were sufficient justification to overcome an IJ's objective determination that asylum was not justified, anyone could circumvent an adverse removal order/asylum determination by alleging a subjective fear of harm, stonewall an otherwise lawful removal order, and secure indefinite supervised release. Regardless, because Yadin "obstructs his [own] removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." *Hydara*, 2007 WL 2409664, at *2.

Yadin's further attempt at meeting his burden by supplementing the record falls short. In particular, Yadin argues that the article provided shows there is no standing repatriation agreement between the United States and Somalia and that the only way the Somali nationals are issued travel documents is if they consent to removal. (Mot. to Supplement at 2); *see also* (Yadin's Article at 1). Thus, Yadin contends that because he will not consent to removal, he has demonstrated there is no significant likelihood of removal in the reasonably foreseeable future. This argument fails for the same reasons as articulated above. Namely, Yadin's own obstructions cannot be used as a basis to meet his burden that removal is unlikely to occur in the reasonably foreseeable future. *See Hydara*, 2007 WL 2409664, at *2. As discussed above, but for Yadin's failure to consent, he likely would have been removed and Yadin's attempts at supplementing the record do nothing to address this failure. If anything, Yadin's submission further demonstrates that he "has the keys [to freedom] in his pocket and could likely effectuate his removal by providing the information requested." *Lema*, 341 F.3d at 856. As such, Yadin's Petition grounded on his prolonged detention should be denied.

### 2.    Due Process Under the Fifth Amendment

With respect to Yadin's due process claims under the Fifth Amendment, it is unclear which aspects of his detention give rise to his alleged due process violations. *See* (Pet. at 9). Nevertheless, Yadin's due process violations arising under the Fifth Amendment should also be denied.

First, to the extent that Yadin's Fifth Amendment claims could reasonably be construed to raise violations of due process grounded on his prolonged detention, Yadin's claims fail. "When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required." *Moses v. Lynch*, No. 15–cv–4168 (PAM/JJK), 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) (Keyes, Mag. J.), *adopted by* 2016 WL 2596020 (May 5, 2016) (Magnuson, J.). Here, it appears that Respondents followed the custody-review procedures established in the Code of Federal Regulations. *See, e.g.*, (Reply I at 2–3) (detailing the custody-review process); (Ex. 1, Attached to Campbell Decl. 1) [Doc. No. at 5-1 20–33] (same); (Reply II at 3, 4) (detailing Respondents' attempts to notify Yadin of his noncompliance with their request to remove him); (Ex. 3) (same).

Second, to the extent that Yadin's Fifth Amendment claims could reasonably be construed as an attempt to challenge the IJ's removal order, that order cannot be reviewed by this Court. Importantly, 8 U.S.C. § 1252(a)(5)—which addresses judicial review of orders of removal—does not vest this Court with subject matter jurisdiction over that issue, because § 1252(a)(5) vests exclusive jurisdiction "with an appropriate court of appeals." *See also Tostado v. Carlson*, 481 F.3d 1012, 1014 (8th Cir. 2007) (stating "a petition for review to the courts of appeal is the exclusive means of review of an administrative order of removal, deportation, or

exclusion"). Accordingly, Yadin's Petition grounded on due process violations arising under the Fifth Amendment should be denied.

In sum, this Court finds no basis on which to grant Yadin's Petition and must recommend that his Petition be denied and this case dismissed with prejudice.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ahmed Ali Yadin's ("Yadin") Motion to Supplement Petitioner's Reply [Doc. No. 14] is **GRANTED**.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Yadin's Petition For Writ of Habeas Corpus Pursuant to Under 28 U.S.C. § 2241 [Doc. No. 1] be **DENIED**; and

2.    This action be **DISMISSED with prejudice**.


Dated: April 13, 2017

_s/ Steven E. Rau_
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.